GRENDALIZ VÉLEZ-ACEVEDO, ET
AL.

Plaintiffs

v.

CENTRO DE CÁNCER DE LA
UNIVERSIDAD DE PUERTO RICO, ET
AL.

Defendants

CIV. NO.: 19-1560 (SCC)

## OPINION AND ORDER

Plaintiffs Grendaliz Vélez-Acevedo ("Plaintiff Vélez-Acevedo"), her husband Héctor Aponte-Benejan, and the conjugal partnership composed by them, (collectively "Plaintiffs"), filed this suit against Defendants Centro de Cáncer de la Universidad de Puerto Rico, also known as the Comprehensive Cancer Center of the University of Puerto Rico ("Co-Defendant CCUPR" or "CCUPR"), the CCUPR's

interim Executive Director, Luis Clavell-Rodríguez ("Clavell-Rodríguez"), and the CCUPR's Chief Financial Officer, José Dávila-Pérez ("Dávila-Pérez"),[1] in their official and individual capacities. Docket No. 17 at 3-4. Plaintiffs also included the Individual Co-Defendants' spouses, Mary Pou de Clavell and Mayra Seguinot, and their respective conjugal partnerships as parties to the instant suit. *Id.* at 3-4. Plaintiffs' suit advances several claims under federal and state law. [2] *See id.*

---

[1] Throughout this Opinion and Order, the Court will refer to the "Individual Co-Defendants" when jointly referring to Dávila-Pérez and Clavell-Rodríguez. And when collectively referring to the Co-Defendant CCUPR, Clavell-Rodríguez, Dávila-Pérez and their respective conjugal partnerships, the Court will use the term "Defendants."

[2] Plaintiffs filed their Original Complaint on June 8, 2019. Docket No. 1. An Amended Complaint was filed on June 10, 2019. *See* Docket No. 3. Shortly thereafter on, August 12, 2019, Plaintiffs requested the Court's permission to amend the same. *See* Docket No. 11. This request was granted by the Court, *see* Docket No. 14, and a Second Amended Complaint was subsequently filed on September 9, 2019. *See* Docket No. 17.

Pending before the Court is Defendants' Partial Motion to Dismiss. *See* Docket No. 23. Plaintiffs opposed the same ("Opposition"). *See* Docket No. 27. And a Reply, *see* Docket No. 33, and Sur-reply followed, *see* Docket No. 38. After considering the parties' submissions, the Court **GRANTS** in part and **DENIES** in part Defendants' Partial Motion to Dismiss at Docket No. 23.

## I.   Background

According to the allegations set forth in the Second Amended Complaint, while Plaintiff Vélez-Acevedo was an employee at the CCUPR, Co-Defendant CCUPR discriminated against her because of her sex and retaliated against her for collaborating with state and federal agencies regarding purported administrative and financial irregularities at the CCUPR. Docket No. 17 at 20-22. Plaintiffs also claim that Defendants violated Plaintiff Vélez-Acevedo's Fourteenth Amendment rights by unlawfully demoting and discharging her from her career position as Director of

Finance at the CCUPR. *Id.* at 23-24. Plaintiff Vélez-Acevedo now seeks monetary redress under Title VII for sex discrimination and retaliation, and under Section 1983 for violations of her Fourteenth Amendment rights. *Id.* at 29-30.

In their Second Amended Complaint, Plaintiffs also bring forth several claims against Defendants under Puerto Rico law. Namely, a whistleblower retaliation claim, P.R. Laws Ann., tit. 29, § 194 *et seq.* ("Law No. 115"); P.R. Laws Ann. tit. 3, § 1881 *et seq* ("Law No. 2"); a breach of contract claim, P.R. Laws Ann. tit. 31, § 3373; a sex discrimination and retaliation claim, P.R. Laws Ann. tit. 29, § 146 *et seq.* ("Law No. 100"); P.R. Laws Ann. tit. 29, § 1321 *et seq.* ("Law No. 69"), and a tort claim under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802"). *Id.* at 25-28. The Second Amended Complaint also includes a request for injunctive relief in order for Plaintiff Vélez-Acevedo to be reinstated to her former position as Director of Finance at the CCUPR. *Id.* at 28-29.

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 5

Defendants move to partially dismiss Plaintiffs' Second Amended Complaint. Docket No. 23. Specifically, Defendants move to dismiss, under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), Plaintiffs' Section 1983 claim because the CCUPR is allegedly an arm of the state entitled to Eleventh Amendment immunity. *Id.* at 9. Similarly, the Individual Co-Defendants invoke the sovereign immunity afforded to state officials as the basis for dismissal of Plaintiffs' Section 1983 claim against them in their official capacities. *Id.* at 31.

Defendants also move to dismiss additional claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Specifically, Defendants argue that Plaintiffs' Law No. 100 claim should be dismissed given that, Co-Defendant CCUPR does not satisfy the definition of an employer under said law. *Id.* at 33-34. Additionally, the Individual Co-Defendants request that Plaintiffs' Title VII and Law No. 115 claims against them be dismissed because there is no

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 6

individual employee liability under the same. *Id.* at 35-36. Lastly, Defendants seek to dismiss all the claims directed against the Individual Co-Defendants' spouses and their conjugal partnerships. *Id.* at 36-38.

In their Opposition, Plaintiffs argue that after *Puerto Rico v. Sánchez-Valle,* 136 S.Ct. 1863 (2016), the Commonwealth of Puerto Rico ("Commonwealth") is no longer a sovereign state protected by the Eleventh Amendment's immunity. Docket No. 27 at 12. In the alternative, Plaintiffs contend that, in light of the two-prong test set forth in *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico & Caribbean Cardiovascular Center Corp.,* 322 F.3d 56 (1st Cir. 2003), Co-Defendant CCUPR is not an arm of the state. Docket No. 27 at 12-18. Plaintiffs also argue that, Co-Defendant CCUPR is an employer under Law No. 100 because it operates as a private entity. *Id.* at 24. Furthermore, Plaintiffs posit that the Individual Co-Defendants' spouses and conjugal partnership should remain as parties to this suit as they are necessary to

ensure that the judgment is properly executed. *Id.* at 26.

Defendants filed a Reply further briefing their sovereign immunity defense and generally addressing Plaintiffs' Opposition. Docket No. 33. Subsequently, Plaintiffs filed a Sur-reply restating their original arguments that the sovereign immunity conferred by the Eleventh Amendment does not apply to Puerto Rico and that Co-Defendant CCUPR is not an arm of the state. Docket No. 38 at 6-10.

## II.    Standard of Review

A defendant may challenge a federal court's subject-matter jurisdiction under Rule 12(b)(1). *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). A sovereign immunity challenge may be brought under Rule 12(b)(1). *Id.* In ruling upon such a motion, the Court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1210-1211 (1st Cir. 1996) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).

The Court may also consider any evidence the parties submit. *See Martínez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, 74 (1st Cir. 2016) (citing *Aversa*, 99 F.3d at 1210)).

Additionally, Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In assessing a motion to dismiss, the Court must employ a two-step approach. *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012). First, the Court must isolate and ignore the statements in the complaint that simply offer legal labels and conclusions. *Lyman v. Baker*, 954 F.3d 352, 360 (1st Cir. 2020) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7, 12 (1st Cir. 2011)). Then, in step two, the Court must take all well-pleaded facts as true and see if they set forth a plausible claim for relief. *Id.* The complaint plausibly narrates a claim if it allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III. Analysis

### A. Sovereign Immunity

As a threshold matter, the Court notes that the First Circuit has consistently held that the Commonwealth is afforded the sovereign immunity enjoyed by states under the Eleventh Amendment. *See Grajales v. Puerto Rico Ports Authority*, 831 F.3d 11, 13 (1st Cir. 2016); *Díaz-Fonseca v. Puerto Rico,* 451 F.3d 13, 33 (1st Cir. 2006); *Ramírez v. Puerto Rico Fire Service,* 715 F.2d 694, 697 (1st Cir. 1983). The *Sánchez-Valle* case did not alter this long-established precedent. In *Sánchez-Valle,* the Supreme Court was faced with the issue of whether the United States and the Commonwealth were "separate sovereigns" for purposes of the Double Jeopardy Clause and whether they could both prosecute a defendant for the same offense without violating that provision. 136 S.Ct. at 1867-1868. The Supreme Court held that Puerto Rico was not a separate sovereign from the Federal Government for double

jeopardy purposes only, given that under said context "the ultimate source of Puerto Rico's prosecutorial power is the Federal Government." *Id.* at 1876. In view of the limited scope under which the *Sánchez-Valle* decision was rendered, this Court declines to adopt Plaintiffs' proposition to reevaluate well-settled First Circuit precedent regarding the Commonwealth's sovereign immunity status.[3] Having decided that the Commonwealth enjoys the sovereign immunity afforded by the Eleventh Amendment, the Court turns to whether Co-Defendant CCUPR is an arm of the state that can benefit from the Commonwealth's sovereign immunity.

### 1. Whether the CCUPR Can Claim the Sovereign Immunity Afforded to the UPR

Defendants propose that the CCUPR is an arm of the state

---

[3] Furthermore, in *Payne v. Álvarez-Ortiz,* 229 F. Supp.3d 115, 116-17 (D.P.R. 2017), the district court rejected plaintiffs' argument that the *Sánchez-Valle* decision indicated that the Commonwealth was no longer afforded sovereign immunity under the Eleventh Amendment.

in view of its relationship with the University of Puerto Rico ("UPR") which enjoys Eleventh Amendment immunity because it is an arm of the state.[4] *See* Docket No. 23 at 9. The nature and confines of the relationship between Co-Defendant CCUPR and the UPR are defined in the CCUPR's Enabling Act ("CCUPR Enabling Act"), *see* P.R. Laws Ann. tit. 24, §§ 3365-3379. Notably, the CCUPR's Enabling Act provides that, Co-Defendant CCUPR "shall be affiliated, through agreements, to the [UPR.]" *Id.* at § 3365. The CCUPR's Enabling Act further instructs that Co-Defendant CCUPR shall enter into agreements with the UPR in order to integrate research and educational efforts related to cancer. *Id.* at § 3368(a). It also states that three out of the nine members of the CCUPR's Board of Directors (the "Board") are members of the UPR.[5] *Id.* at § 3369(b)(1).

---

[4] In *Irizarry-Mora v. University of Puerto Rico*, the First Circuit held that, the UPR is an arm of the state entitled to Eleventh Amendment immunity. *See* 647 F.3d 9, 17 (1st Cir. 2011).

[5] According to Defendants, because three out of the nine members of the

However, these legislative mandates do not entail that Co-Defendant CCUPR is a part of the UPR and is therefore shielded by its immunity. The reason being that, the Commonwealth created Co-Defendant CCUPR with its own Enabling Act, separate from the enabling act of the UPR. Most fundamentally, Co-Defendant CCUPR's Enabling Act expressly states that the CCUPR is an independent entity separate from any other agency and instrumentality of the Commonwealth. *Id.* at § 3365. Further, here, the UPR did not create the CCUPR as a subsidiary corporation even though it has the ability to do so. *See* P.R. Laws Ann. tit. 18, § 602(h)(19); *see also Crews & Associates, Inc., v. Corporación de Servicios*

---

Board of Directors ("Board") are members of the UPR, this shows that the Commonwealth intended to control Co-Defendant CCUPR through the UPR. Docket No. 23 at 14. Defendants further argue that the UPR controls the Board as a majority vote must include at least one vote by a member of the UPR. *Id.* However, this statutory design does not grant the UPR control over the CCUPR, for the Governor of the Commonwealth is tasked with appointing five members to the Board and one *ex-officio* member to the Board, the Secretary of Health. *See* P.R. Laws Ann. tit. 24, § 3369(b)(2).

*Médicos Universitarios, Inc.*, 2008 WL 3833594, at *6-8 (D.P.R. Jul. 12, 2008) (holding that an entity that administered a university hospital was covered by the UPR's sovereign immunity as it was created under the UPR's enabling act).

The CCUPR's Enabling Act also grants Co-Defendant CCUPR complete administrative and fiscal autonomy.[6] P.R. Laws Ann. tit. 24, § 3375. In light of the fiscal autonomy afforded to the CCUPR, the CCUPR's Enabling Act dictates

---

[6] Defendants argue that the Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico (the "Act"), P.R. Laws Ann. tit. 3, §§ 9391-9417, curtailed Co-Defendant CCUPR's autonomy. Docket No. 23 at 22-23. Indeed, the Act applies—to a certain extent—to Co-Defendant CCUPR, *see id.* at § 9395, and it does establish a certain degree of control over Co-Defendant CCUPR, *see id.* at § 9414. But the measures that Defendants contend are imposed by the Act do not alter the CCUPR's autonomy as they are specific measures directed at professional and employee contracting and are not intended to change the degree of independence the Commonwealth conferred to Co-Defendant CCUPR through its Enabling Act. Moreover, the provision of the Act that Defendants rely upon—specifically, the provision pertaining to the reduction of operation expenses, and electric power and water consumption—only applies to state agencies and not to public corporations such as the CCUPR. *See* P.R. Laws Ann. tit. 3, §§ 9402(d), 9402(m).

that when the CCUPR submits its budget before the Puerto Rico Legislature, the same "shall not be entered as part of the calculations for the general budget of the [UPR]." *Id.* at § 3372. Meaning that, the CCUPR and UPR's budgets are separate from each other.

This analysis shows that, even though the CCUPR is required to be affiliated with the UPR through collaboration agreements, the aforementioned elements signal that Co-Defendant CCUPR is an independent entity that is separate from the UPR and does not share the UPR's sovereign immunity. Accordingly, the Court does not find that the CCUPR may claim the sovereign immunity afforded to the UPR.

2. ***Whether the Commonwealth Created the CCUPR as an Arm of the State***

Defendants also argue that, the CCUPR is an arm of the state because the Commonwealth intended for such to be the case when it created the entity. *See* Docket No. 23 at 9. Thus,

having determined that the CCUPR cannot latch onto the UPR in order to benefit from the sovereign immunity it enjoys because it is as an arm of the state, the Court must evaluate whether the Commonwealth structured Co-Defendant CCUPR to be an arm of the state.[7]

To determine if the CCUPR is an arm of the state, the Court must apply the analysis delineated in *Fresenius.* In that case, the First Circuit held that the Puerto Rico and the Caribbean Cardiovascular Center Corp., ("PRCCCC") was not an arm of the state after applying a freshly reshaped two-step analysis. *See Fresenius*, 322 F.3d at 75. The first step of the analysis calls upon the Court to inquire into whether the state has structured the entity to share its sovereignty. *Id.* at 68. If the factors considered in analyzing the entity's structure point to different directions, the dispositive second step in the Court's inquiry requires an examination as to whether, in the

---

[7] Defendants bear the burden of showing that the CCUPR is an arm of the state. *See Grajales,* 831 F.3d at 15 (citing *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002)).

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 16

event that a judgment is entered against the CCUPR, the same

will be paid by the Commonwealth's treasury. *Id.* Having set

the stage for the analysis to come, the Court proceeds to apply

the two-step analysis outlined in *Fresenius*.

### a. Structural Indicators

The first step of the analysis requires the Court to consider

a full range of structural indicators to determine if the

Commonwealth intended for Co-Defendant CCUPR to share

its immunity.[8] The first structural indicator to consider is the

---

[8] In *Metcalf & Eddy, Inc., v. Puerto Rico Aqueduct and Sewer Authority*, the
First Circuit identified a list of seven factors to aide in the inquiry as to
whether an entity is an arm of the state. 991 F.2d 935, 939-940 (1st Cir.
1993). The list includes as factors:

> (1) whether the agency has the funding power to enable
> it to satisfy judgments without direct state participation
> or guarantees; (2) whether the agency's function is
> governmental or proprietary; (3) whether the agency is
> separately incorporated; (4) whether the state exerts
> control over the agency, and if so, to what extent; (5)
> whether the agency has the power to sue, be sued, and
> enter contracts in its own name and right; (6) whether the
> agency's property is subject to state taxation; and (7)
> whether the state has immunized itself from

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 17

characterization of Co-Defendant CCUPR under Puerto Rico law, with a focus on Co-Defendant CCUPR's Enabling Act. *See Grajales*, 831 F.3d at 21. Like the PRCCCC, Co-Defendant CCUPR's Enabling Act does not explicitly indicate that Co-Defendant CCUPR is an arm of the state. *See Fresenius*, 322 F.3d at 68. Some provisions in the CCUPR's Enabling Act do just the opposite by offering several signals that weigh against finding arm of the state status.[9]

A factor that heavily weighs against finding that the CCUPR is an arm of the state pertains to the fact that the

---

responsibility for the agency's acts or omissions.

*Id.*; *see also Grajales*, 831 F.3d at 21-29 (adopting *Metcalf & Eddy, Inc.*'s structural factors into *Fresenius* two-step analysis); *Fresenius*, 322 F.3d at 62, 68-72 (same). The *Metcalf & Eddy, Inc.* court stated that this "list is not an all-inclusive compendium, for other areas of inquiry may prove fruitful in particular circumstances." 991 F.2d at 939.

[9] Defendants argue that Co-Defendant CCUPR's Enabling Act, *see* P.R. Laws Ann. tit. 24, § 3371, exempts Co-Defendant CCUPR from paying all types of taxes and fees imposed by the Government of Puerto Rico or its municipalities. Docket No. 23 at 15. This fact weighs in favor of immunity. *Grajales*, 831 F.3d at 23 n.12; *see also Fresenius*, 322 F.3d at 69 n.14 (same).

Commonwealth created the CCUPR as a public corporation that is independent from any other agency or instrumentality under the Commonwealth's umbrella. P.R. Laws Ann. tit. 24, § 3365. This statutory language sends a strong message that the Commonwealth did not intend for Co-Defendant CCUPR to be an arm of the state. *See Grajales*, 831 F.3d at 22. As the First Circuit noted in *Grajales*, when the Commonwealth has chosen to make an entity an arm of the state it has created the entity as an instrumentality of the Commonwealth, directly supervised and attached to a component part of the Commonwealth. *Id.* at 23 (citing *Fresenius*, 322 F.3d at 69-70).

Other sections of the CCUPR's Enabling Act that weigh against finding that the CCUPR is an arm of the state, are that: (1) Co-Defendant CCUPR has the capacity to sue and be sued,[10] P.R. Laws Ann. tit. 24, § 3368(o); (2) Co-Defendant

---

[10] Co-Defendant CCUPR's Enabling Act contains a provision stating that the CCUPR, its Board of Directors, and all its employees are subject to the Actions Against the Commonwealth Act, P.R. Laws Ann. tit. 32, § 3077-3092a. *See* P.R. Laws Ann. tit. 24, § 3378. The Actions Against the

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 19

CCUPR can enter into contracts with the Commonwealth, *id.* at § 3368(p); (3) Co-Defendant CCUPR can borrow money from the Commonwealth, *id.* at § 3368(l); and (4) the Board must annually submit to the Puerto Rico Legislature its budget for each fiscal year, *id.* at § 3372.

The second structural indicator requires the Court to assess the nature of Co-Defendant CCUPR's functions. *Fresenius*, 322 F.3d at 70. According to the CCUPR's Enabling

Commonwealth Act authorizes a plaintiff to sue the Commonwealth in its own courts for causes of actions specified in said Act. P.R. Laws Ann. tit. 32, § 3077. Defendants appear to argue, in a cursory and undeveloped fashion, that the Actions Against the Commonwealth Act favors granting it an arm of the state status. *See* Docket No. 23 at 15. But here, the "consent to suit" was only meant to operate in state court and not in federal court. *See Gierbolini-Rodriguez v. Puerto Rico,* Civil No. 15-2607, 2017 WL 944195, at *3 (D.P.R. Mar. 9, 2017); *Reyes-Reyes v. Toledo-Dávila,* 754 F. Supp.2d 367, 370-371 (D.P.R. 2010). Moreover, § 3378 does not specify if by the CCUPR being subject to the Actions Against the Commonwealth Act, this means that, for all purposes, the CCUPR is to be treated as the Commonwealth, if the Commonwealth is supposed to cover the CCUPR's liability or if it only pertains to the statutory recovery limitations imposed. Given this uncertainty, § 3378 does not definitively reveal whether the Commonwealth intended for the CCUPR to be treated as an arm of the state.

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 20

Act, its purpose is to champion public policy that focuses on the "prevention, orientation, research and rendering of clinical services and related cancer treatments in Puerto Rico." P.R. Laws Ann. tit. 24, § 3367. As demonstrated by the Enabling Act's legislative intent, the Puerto Rico Legislature wanted Co-Defendant CCUPR to assist Puerto Ricans battling cancer. *See* Docket No. 23-1 at 5-6 (Defendants' official translation of the Enabling Act which includes the Puerto Rico Legislature's statement of purpose). This public purpose weighs in favor of granting arm of the state status to Co-Defendant CCUPR as it is charged mainly with improving Puerto Rican's general welfare, which is primarily a governmental function. *See Grajales*, 831 F.3d at 23-24 (stating that Puerto Rico Ports Authority's duty to promote general welfare suggest arm of the state status but that its other proprietary functions did not).

The third structural indicator centers on the degree of control and supervision that the Commonwealth maintains

over the CCUPR. *See id.* at 24. This third indicator shows that the Commonwealth exerts significant control over the CCUPR, favoring the proposition that Co-Defendant CCUPR is an arm of the state. One way the Commonwealth controls Co-Defendant CCUPR is through its Board. The Governor controls the Board by having the power to appoint five private citizens with the advice and consent of the senate. P.R. Laws Ann. tit. 24, § 3369(b)(2). The remaining four members of the Board are *ex-officio* members, including the Secretary of Health of Puerto Rico, and three members of the UPR.[11] *Id.* at § 3369(b)(1). Additionally, the Chairman of the Board is appointed by the Governor. *Id.* at § 3369(b)(3).

Another way the Commonwealth controls and supervises Co-Defendant CCUPR is by requiring its Board to submit to

---

[11] The Enabling Act requires that the President of the UPR, the Chancellor of the UPR's Medical Science Campus, and the Dean of the UPR's School of Medicine be a part of the Board. P.R. Laws Ann. tit. 24, § 3369(b)(1).

the Puerto Rico Legislature annual reports.[12] *Id.* at §§ 3372, 3373; *see Pastrana-Torres v. Corporación de Puerto Rico Para La Difusión Pública*, 460 F.3d 124, 127 (1st Cir. 2006) (stating that reports to the Governor and the Puerto Rico Legislature indicates control of the entity). The fact that the Commonwealth controls Co-Defendant CCUPR's Board of Directors and that the Board is required to prepare annual reports for the Commonwealth weighs rather strongly in favor of arm of the state status. *See Pastrana-Torres*, 460 F.3d at 127 (stating that a Board of Directors governed by members appointed by the Governor, suggest Commonwealth's control over the entity).

---

[12] Specifically, the CCUPR's Enabling Act requires that Co-Defendant CCUPR submit a budget report to the Puerto Rico Legislature. P.R. Laws Ann. tit. 24, § 3372. The Enabling Act also dictates that the CCUPR's Executive Director must submit an annual report to the Board, detailing the work done by Co-Defendant CCUPR, including information regarding how it has used the economic resources assigned by virtue of the Enabling Act. *Id.* at § 3373. The Board shall then revise the report and submit the same to the Puerto Rico Legislature. *Id.*

Another structural indicator that is also pertinent to the analysis is whether state court decisions have characterized the CCUPR as an arm of the state. *Fresenius*, 322 F.3d at 70. However, Defendants have not pointed to any decisions—from state court or this District—establishing that Co-Defendant CCUPR is—or is not, for that matter—an arm of the state, and, to date, the Court has not found any.

Taken together, the structural indicators addressed above do not paint a clear picture as to whether the Commonwealth intended to make Co-Defendant CCUPR an arm of the state. Therefore, the Court will proceed to the second step of the analysis employed in *Fresenius* and examine whether, in the event that judgment is entered against the CCUPR, the Commonwealth's treasury would be obligated to pay for said judgment.

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 24

### b. Impact on the Commonwealth's Treasury

The question that guides the second step of the analysis is "[i]f the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise?" *Fresenius*, 322 F.3d at 72 (quoting *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994)). To answer this question the Court must look at two aspects. *Id.* First, the Court must analyze the CCUPR's statutory scheme in order to see what is said regarding its debts and the manner in which revenue is raised. *Id.* The Court must then consider whether, in practice, the Commonwealth has assumed Co-Defendant CCUPR's debts, "directly or indirectly, by providing virtually all the funds needed for the operation of [the CCUPR,]" for it may be that, by providing the bulk of the funds the entity needs to operate, said funds could be used to pay for a judgment entered against the entity. *Id.* at 72-73.

Regarding the CCUPR's potential shortfalls, the Enabling Act advises the CCUPR to tread carefully by "maintain[ing] the budget within the limits of the anticipated revenues so as not to incur [in] any deficiencies." P.R. Laws Ann. tit. 24, § 3372. In *Fresenius*, the First Circuit clarified that this type of language does not mean that the Commonwealth is responsible for the entity's debts. 322 F.3d at 73. Instead, it interpreted this type of statutory language to mean that the Commonwealth wanted to impose discipline on the entity and to deter it "from building up unpaid debts." *Id.*; *see also* P.R. Laws Ann. tit 24, § 343h (PRCCCC's analogous budget statute provision).

As far as Co-Defendant CCUPR's ability to raise revenue is concerned, the Enabling Act shows that CCUPR is vested with wide powers to raise its own revenue and satisfy its debts. For example, the CCUPR's Enabling Act authorizes Co-Defendant CCUPR to issue bonds.[13] P.R. Laws Ann. tit. 24, §

---

[13] The Commonwealth is not a guarantor of the bonds. *See* P.R. Laws Ann.

3376. The Enabling Act also permits Co-Defendant CCUPR to negotiate and execute all types of contracts with private or public entities. *Id.* at § 3368(p). Additionally, it authorizes the CCUPR to take money on loan from any funding source. *Id.* at § 3368(l). The Enabling Act also allows the CCUPR to establish collaboration agreements with other public and private entities. *Id.* at § 3368(v). Moreover, it enables the CCUPR to raise revenue by seeking, receiving and accepting, gifts and donations from any entity, *id.* at § 3368(s), and by owning, transferring, mortgaging, leasing any of its real and personal property, *id.* at § 3368(u). These provisions hint at a showing that the Commonwealth created Co-Defendant CCUPR in such a way that if a judgment were entered against it, it need not depend on state funds to pay for said judgment, for other sources of revenue could be available and used to satisfy the same.

---

tit. 24, § 3376.

The Court now turns to how the Commonwealth's fiscal relationship with the CCUPR has played out in practice. When the Commonwealth created Co-Defendant CCUPR, it assigned legislative appropriations for 2004 to 2014 so that Co-Defendant CCUPR could begin to operate. *See* Act of Aug. 26, 2004, No. 230, § 14, *quoted in* P.R. Laws Ann. tit. 24, § 3365, appropriations; *see also* Docket No. 23-1 at 17-18 (Defendants' official translation of the Act). In those years the Commonwealth awarded Co-Defendant CCUPR up to 7 million dollars in legislative appropriations.[14] *Id.* The Commonwealth later assigned Co-Defendant CCUPR between 19 million dollars to 37 million dollars in legislative

---

[14] Defendants only attached financial statements from 2016 to 2020 to their Partial Motion to Dismiss, therefore failing to provide sufficient information for the Court to verify whether Co-Defendant CCUPR was in fact awarded up to 7 million dollars in legislative appropriations from 2004 to 2014. *See* Docket No. 23. The Court, nonetheless, will assume that Co-Defendant CCUPR received the amount of appropriations stated in Act of Aug. 26, 2004, No. 230, § 14, *quoted in* P.R. Laws Ann. tit. 24, § 3365, appropriations, as it does not change the Court's analysis.

appropriations for the years 2015 to 2020. *See* Act of July 2, 2015, No. 106, § 1.

Regarding the legislative appropriations,[15] for Fiscal Year 2016, the Puerto Rico Legislature assigned $19,000,000.00 in legislative appropriations to the CCUPR but ultimately disbursed only $12,533,710.00, which amounted to 44 percent of Co-Defendant CCUPR's total revenue. Docket No. 23-2 at 8. For Fiscal Year 2017 the Puerto Rico Legislature assigned $37,108,000.00 in legislative appropriations and disbursed $64,919,184.00, which amounted to 90 percent of Co-Defendant CCUPR's revenue. Docket No. 23-3 at 3. Similarly, for Fiscal Year 2018 the Puerto Rico Legislature assigned $22,827,000.00 in legislative appropriations and disbursed $30,274,241.00, which translated into 80 percent of Co-

---

[15] Defendants attached to their Partial Motion to Dismiss copies of the CCUPR's financial statements for the years 2016 to 2020. *See* Docket No. 23. Defendants also included a sworn statement, executed by Co-Defendant Dávila-Pérez, authenticating the financial statements. *See* Docket No. 23-8. Plaintiffs have not disputed the authenticity of the documents.

Defendant CCUPR's revenue. Docket No. 23-4.

Notably, however, for Fiscal Years 2019 to 2021 the Puerto Rico Legislature began to decrease its legislative appropriations to the CCUPR. For Fiscal Year 2019, the Puerto Rico Legislature assigned $23,554,000.00 in legislative appropriations of which it disbursed a total of $19,817,050.00, which consisted of 69.2 percent of Co-Defendant CCUPR's total revenue. Docket No. 23-5. The legislative appropriations once again sharply decreased for Fiscal Year 2020 as its $14,777,000.00 contribution only amounted to 32 percent of Co-Defendant CCUPR's revenue. Docket No. 23-7 at 3. The decrease in funding continued through Fiscal Year 2021, when the Puerto Rico Legislature disbursed $10,459,000.00 to the CCUPR in state funds, resulting in 25 percent of the CCUPR's total revenue.[16] It is worth noting that all of Co-

_____

[16] The Court takes judicial notice under Federal Rule of Evidence 201 of CCUPR's financial statement for Fiscal Year 2021. Fed. R. Evid. 201. The financial statement can be found at the Financial Oversight & Management Board for Puerto Rico's website. *FY21 Certified Budget for the*

Defendant CCUPR's financial statements reflect additional sources of revenue, which include Federal funds, grants, donations, and hospital services.

In practice, as discussed above, the Commonwealth has decreased its funding of the CCUPR over the years. A look at the latest financial statement—namely the CCUPR's financial statement for Fiscal Year 2021—demonstrates that the Commonwealth contributed only to 25 percent of Co-Defendant CCUPR's total revenue. This amount of state funding is not enough to claim arm of the state status as the *Fresenius* court found that less than thirty percent in state funding is not sufficient to claim Eleventh Amendment immunity. 332 F.3d at 75; *Orria-Medina v. Metropolitan Bus Authority*, 565 F. Supp.2d 285, 299 (D.P.R. 2007) (holding that the Commonwealth's subsidy of 25 percent to the

_____

*Commonwealth of Puerto Rico*, FINANCIAL OVERSIGHT & MANAGEMENT BOARD FOR PUERTO RICO (June 30, 2020), https://drive.google.com/file/d/1KWwxL2CuaE6Qv-xWgE-QYpT_X7o2y5s9/view. (Last visited June 25, 2021).

Metropolitan Bus Authority is not substantial to claim sovereign immunity).

In addition to the fact that the Commonwealth's contribution to Co-Defendant CCUPR has sharply decreased over the years, it is important to underscore that, its contribution is voluntary and unilateral. *See Metcalf & Eddy, Inc.*, 992 F.2d at 940-941 (finding that the Commonwealth's control of the money to the Puerto Rico Aqueduct and Sewer Authority was unilateral as it did not give the entity a *carte blanche* to all the funds it needed from the public treasury). Moreover, a review of the amounts assigned via legislative appropriations vis-à-vis the amounts actually received reveal that, in practice, as far as the actual funding of the CCUPR is concerned, the Commonwealth has been inconsistent.

Indeed, and as Defendants point out, the Commonwealth legally obligated itself to pay $15,000,000.00, per year, for a period of 30 years, to satisfy the debt incurred in the construction and development of the CCUPR. Docket No. 23

at 26; *see also* Act of Aug. 26, 2004, No. 230, § 14, *quoted in* P.R. Laws Ann. tit. 24, § 3365, appropriations. However, as the CCUPR's financial statements reveal, the Commonwealth has not been disbursing the assigned funds for the payment of the construction debt pertaining to the hospital and radiotherapy facility. While the financial statement for Fiscal Year 2016 reflects that the Commonwealth disbursed $18,342,380.00 in construction funds to Co-Defendant CCUPR, *see* Docket No. 23-2 at 8, the financial statement for Fiscal Year 2017 shows that Co-Defendant CCUPR did not receive any construction funds. Docket No. 23-3 at 3. The rest of the of the financial statements are silent regarding this matter. Docket No. 23 exhibits 4-5, 7. Most fundamentally, as of July 1, 2018, the CCUPR has an outstanding debt of $120,482,398. Docket No. 23 at 29.

In *Fresenius*, the First Circuit pointed out that the Commonwealth did not assign state funds to the PRCCCC during Fiscal Years 2001 and 2002, even though the PRCCCC

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 33

had a deficit of $12,000,000.00. 322 F.3d at 74. The *Fresenius* court found that this fact weighed in favor of not granting arm of the state status because the elimination of state funds reflected that PRCCCC was meant to operate under its own funds. *Id.* Here, while legislative appropriations were assigned to pay for certain debts related to the construction of the CCUPR, in practice, and as this Court's analysis reveals, the Commonwealth has not consistently disbursed the agreed upon amounts to the CCUPR to pay for said debts for Fiscal Years 2017 to 2020. *See* Docket Nos. 23-3 to 23-5 and 23-7.

Further, the Enabling Act shows that Co-Defendant CCUPR has funding power to satisfy judgments that may be entered against it without the direct participation of the Commonwealth. *See Grajales*, 831 F.3d at 24 (finding that the Commonwealth designed the Puerto Rico Ports Authority to raise its own revenue and shoulder its litigation cost); *compare Wojcik v. Massachusetts Lottery Com'n*, 300 F.3d 92, 99 (1st Cir. 2002) (holding that the state lottery could not satisfy a

judgment without drawing from the state's treasury because any unanticipated expenditure will be paid out of legislative appropriations as the lottery could not issue bonds or raise revenue in any other way). As mentioned above, the Commonwealth designed Co-Defendant CCUPR to raise its own revenue in different ways by granting it wide negotiating powers and the capacity to issue bonds. *See* P.R. Laws Ann. tit. 24, §§ 3368, 3374. Moreover, the fact that the Puerto Rico Legislature's appropriations to the CCUPR in recent years has not been substantial—rather, it appears to be consistently decreasing—and that Co-Defendant CCUPR may raise revenue on its own to pay for litigation costs, shows that the Commonwealth's treasury is not wholly at risk.

With the aforesaid analysis in mind, the Court finds that Defendant CCUPR is not an arm of the state and therefore is not entitled to sovereign immunity. The result reached here is mainly due to the fact that the facts of this case closely resemble those in *Fresenius*. Both the PRCCCC and Co-

Defendant CCUPR share similar enabling acts. Both enabling acts grant the entities considerable autonomy and independence from the Commonwealth. The enabling acts also structured the entities to have different sources of revenue power so that the entities could pay for their operational and litigation costs. The pattern of decreased state funding further highlights this. These similarities point to the conclusion that Co-Defendant CCUPR is not an arm of the state. Accordingly, Defendants' request to dismiss Plaintiffs' Section 1983 against Co-Defendant CCUPR and the Individual Co-Defendants is **DENIED**.

### B.  Title VII and Law No. 115

As mentioned above, Defendants seek to dismiss Plaintiffs' Title VII and Law No. 115 claims against the Individual Co-Defendants because there is no individual employee liability under Title VII and Law No. 115. Docket No. 23 at 35-36. In their Opposition, Plaintiffs clarified that the Title VII and Law No. 115 claims are only addressed against

Co-Defendant CCUPR, and not against the Individual Co-Defendants. Docket No. 27 at 25-26.

A look at the pertinent case law confirms that there is no individual employee liability under Title VII. In *Fantini v. Salem State College*, the First Circuit held that there is no individual employee liability under Title VII. 557 F.3d 22, 31 (1st Cir. 2009); *see also Hernández-Mendez v. Rivera*, 137 F. Supp.3d 142, 153 (D.P.R. 2015) (applying *Fantini* and dismissing plaintiff's gender discrimination and retaliation claims). Similarly, there is also no individual liability under Law No. 115. *See Ibarra-Berrios v. ACI-HERZOG*, Civil No. 19-21202 (GAG), 2020 WL 7233590, at *4 (D.P.R. Dec. 8, 2020) (citing *Galarza-Cruz v. Grupo HIMA San Pablo, Inc.*, Civil No. 17-606 (PAD), 2018 WL 324863, at *3 (D.P.R. Jan. 8, 2018)).

Therefore, because these claims fail as a matter of law, the Court **GRANTS** the Defendants' request to dismiss Plaintiffs' Title VII and Law No. 115 claims against the Individual Co-Defendants in their individual capacity. Accordingly, these

claims are **DISMISSED WITH PREJUDICE**.

## C. *Spouses and Conjugal Partnerships' Liability*

Defendants also seek the dismissal of Plaintiffs' Section 1983, Law No. 115, Law No. 100, Law No. 69, Law No. 2, and Article 1802 claims against the Individual Co-Defendants' spouses and their respective conjugal partnerships. Docket No. 23 at 36-38. While all the claims asserted in the Second Amended Complaint name Co-Defendants CCUPR, Clavell-Rodríguez, and Dávila-Pérez as unlawful actors,[17] the Second Amended Complaint does not include Mary Pou de Clavell, Mayra Seguinot, and their respective conjugal partnerships, as Co-Defendants who are individually liable under Plaintiffs' claims.[18]

---

[17] *See* Docket No. 17 at ¶¶ 90, 91, 103, 112, 117.

[18] The Court notes that "[t]he spouse of a state actor may not be held individually liable for the section 1983 claims of the state actor." *Wehran-Puerto Rico, Inc., v. Municipality of Arecibo*, 106 F. Supp.2d 276, 289 (D.P.R. 2000) (citing *Lensel López v. Cordero*, 659 F. Supp. 889, 891 (D.P.R. 1987)).

In their Opposition, Plaintiffs aver that, even though Mary Pou de Clavell and Mayra Seguinot, as well as their conjugal partnerships, are not individually liable when it comes to the claims set forth in the Second Amended Complaint, they should be included as parties to this suit to ensure the proper execution of the judgment regarding their Section 1983, Law No. 115, Law No. 100, Law No. 69, Law No. 2, and Article 1802 claims. Docket No. 27 at 26-27.

Under Puerto Rico law, conjugal partnerships are not directly responsible for the payment of fines or pecuniary condemnations imposed against one of the spouses. P.R. Laws Ann. tit. 31, § 3663.[19] Puerto Rico law dictates that the conjugal partnerships are subsidiary responsible for such judgments, but only after establishing, in the execution of judgment stage, that the debtor spouse has no private capital

---

[19] Act of June 1, 2020, No. 55, amended Puerto Rico's Civil Code. The dispositions at P.R. Laws Ann. tit. 31, § 3663 regarding the fines and pecuniary condemnations by one of the spouses remain the same in the amended Puerto Rico Civil Code's Article 522.

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 39

to pay the monetary obligation and that the conjugal partnership has assets to pay its own debts. *Gelabert de Peguero v. Municipality of San Juan*, Civil No. 14-1812 (JAG), 2017 WL 11512626, at *2 (D.P.R. Mar. 31, 2017) (citing *Rivera-Garcia v. Sprint PCS Caribe*, Civil No. 09-1813 (PG), 2010 WL 3123296, at *7 (D.P.R. Aug. 9, 2010)).

As an exception, a conjugal partnership will be directly liable for monetary judgments imposed against an individual spouse if the spouse's negligent conduct generates an economic benefit to the partnership. *CMI Capital Market Investment, LLC v. González-Toro*, 520 F.3d 58, 63 (1st Cir. 2008); *see also W Holding Co., Inc. v. Chartis Ins. Company-Puerto Rico*, 904 F. Supp.2d 169, 179 (D.P.R. 2012) (citing *Lugo Montalvo v. González Manon*, 4 P.R. Offic. Trans. 517 (P.R. 1975) ("when a spouse's negligent conduct generates economic benefits for the partnership, the partnership is liable for the resulting damages").

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 40

Here, the Individual Co-Defendants' conjugal partnerships are not directly or individually liable for the Individual Co-Defendants' acts. The Individual Co-Defendants' alleged acts of sex discrimination, retaliation, demotion, and termination could only be done intentionally and with the purpose to harm Plaintiff Vélez-Acevedo. No economic benefit was gained by the conjugal partnerships from the Individual Co-Defendants' alleged unlawful and intentional acts. *See Rosario Toledo v. Distribuidora Kikuet, Inc.*, No. CC-1998-0388, 2000 WL 943550, at *6 (P.R. 2000) (holding that a spouse's acts of sex discrimination did not benefit the conjugal partnership); *Gelabert de Peguero*, 2017 WL at *2 (holding that a police officer's conjugal partnership did not benefit from its constituent's intentional shooting of plaintiff's deceased spouse). Furthermore, just because the intentional acts reportedly occurred at the Individual Co-Defendants' workplace, this does not mean that the conjugal partnerships are directly liable to Plaintiffs. *See Rosario Toledo*, 2000 WL at

*2 (citing *Orta v. Padilla Ayala*, 131 P.R. Dec. 227 (1992)).

Plaintiffs may join the Individual Co-Defendants' conjugal partnerships at the execution of judgment stage if need be. Accordingly, the Court **GRANTS** the Individual Co-Defendants' request to dismiss the claims against their spouses and conjugal partnerships. Plaintiffs' Section 1983, Law No. 115, Law No. 100, Law No. 69, Law No. 2, and Article 1802 claims against the Individual Co-Defendants' spouses and conjugal partnerships are thus **DISMISSED WITHOUT PREJUDICE**.

### D.  Law No. 100

Lastly, Defendants request that the Court dismiss Plaintiffs' Law No. 100 claim against all Defendants as they do not satisfy the definition of an employer under said statute. Docket No. 23 at 33. "Law [No.] 100 is Puerto Rico's general employment discrimination statute." *Salgado-Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp.2d 151, 176 (D.P.R. 2008) (citing P.R. Laws Ann. tit 29, § 146). The statute is meant to

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 42

apply to private employers with the exception of government agencies or instrumentalities operating as private businesses or enterprises. *See* P.R. Laws Ann. tit 29, § 151(2). The Supreme Court of Puerto Rico in *Rodríguez-Cruz v. Padilla Ayala* clarified that the statute's language regarding government agencies or instrumentalities that operate as private enterprises, was meant to include public corporations of the Government of Puerto Rico into the definition of "employer" under Law No. 100. *See* 125 P.R. Dec. 486, 509-510 (P.R. 1990) (Westlaw official translation). Defendants' request to dismiss Plaintiffs' Law No. 100 claim is meritless as Co-Defendant CCUPR satisfies the definition of "employer" under Law No. 100 because it is a public corporation of the Commonwealth that, as the analysis above showed, is not an arm of the state. *See Torres-Santiago v. Alcaraz-Emmanuelli*, 553 F. Supp.2d 75, 86 n.8 (D.P.R. 2008) (holding that the Metropolitan Bus Authority is not exempt from suit under Law No. 100 as it is not an arm of the state); *compare Calderon-*

*Garner v. Sanchez-Ramos*, 439 F. Supp.2d 229, 238-239 (D.P.R. 2006) (holding that Puerto Rico's Department of Justice is not an employer under Law No. 100 because it does not operate as a private business).

Accordingly, Defendants' request to dismiss Plaintiffs' Law No. 100 claim is **DENIED.**

**IV. Conclusion**

For the reasons stated above, Defendants' Partial Motion to Dismiss at Docket No. 23 is **DENIED** in part and **GRANTED** in part. Specifically, the Court hereby:

- **DENIES** Defendants' Partial Motion to Dismiss as to Plaintiffs' Section 1983 and Law No. 100 claims;

- **GRANTS** Defendant's Partial Motion to Dismiss as to Plaintiffs' Title VII and Law No. 115 claims against the Individual Co-Defendants and therefore **DISMISSES** the same **WITH PREJUDICE**, and;

- **GRANTS** Defendants' Partial Motion to Dismiss as to Plaintiffs' Section 1983, Law No. 100, Law No. 115, Law

GRENDALIZ VELEZ-ACEVEDO, ET AL, v.
CENTRO DE CANCER DE LA UNIVERSIDAD
DE PUERTO RICO, ET AL.

Page 44

No. 69, Law No. 2, and Article 1802 claims against Mary Pou de Clavell, Mayra Seguinot and their conjugal partnerships and therefore **DISMISSES** the same **WITHOUT PREJUDICE**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of July 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE