IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Grendaliz Vélez-Acevedo, Héctor Aponte Benejan, and the Aponte-Vélez Conjugal Partnership,<br><br>Plaintiffs,<br><br>v.<br><br>Centro Comprensivo de Cáncer de la Universidad de Puerto Rico, Dr. Luis A. Clavell-Rodríguez; José E. Dávila-Pérez, and Berkley Insurance Company,<br><br>Defendants. | **Civil No. 19-1560(GMM)** |

**MEMORANDUM AND ORDER**

Before the Court is Grendaliz Vélez-Acevedo's ("Mrs. Vélez"), Héctor Aponte Benejan's, and the Aponte-Vélez Conjugal Partnership's (collectively, "Plaintiffs") motions to: (1) disqualify Defendants' counsel, the law firm of Jimenez, Graffam & Lausell ("JGL"), due to an alleged impermissible conflict of interest; and (2) impose sanctions on defendants for the alleged spoilation of evidence. (Docket Nos. 93; 94)[1]. Defendants, Centro Comprensivo de Cáncer de la Universidad de Puerto Rico ("CCCUPR"), Dr. Luis A. Clavell-Rodríguez; José E. Dávila-Pérez ("Dávila"), and Berkley Insurance Company (collectively "Defendants"), filed their *Opposition to Plaintiffs' Request for Disqualification of*

---

[1] *Request for Disqualification of Defendants' Counsels and Sanctions for Spoilation* (Docket No. 93) and *Memorandum in Support of Plaintiffs' Request for Defendants' Counsels Disqualification and for Sanctions for Evidence Spoilation* (Docket No. 94) (collectively, "*Motions to Disqualify*").

*Defendant's Counsels and Sanctions for Spoilation and Request for Sanctions* on March 23, 2023, alleging that Plaintiffs' motion was a dilatory tactic unsupported by evidence. (Docket No. 110). For the foregoing reasons, Plaintiffs' *Motions to Disqualify* are **DENIED**.

## I.  LEGAL STANDARD FOR MOTION TO DISQUALIFY

When analyzing motions for disqualification, federal district courts look to the local rules promulgated by the district court itself. Ashe v. Distribuidora Norma Inc., Civil No. 10-2236 (DRD), 2012 WL 12995645, at *2 (D.P.R. Sept. 25, 2012). "The standards for the professional conduct of attorneys in the U.S. District Court for the District of Puerto Rico are the Model Rules of Professional Conduct adopted by the American Bar Association, as amended." United States v. Morrell-Corrada, 343 F.Supp.2d 80, 84 (D.P.R. 2004); *see also* Local Civ. R. 83E(a) ("[i]n order to maintain the effective administration of justice and the court integrity, each attorney admitted or permitted to practice before this court shall comply with the standards of professional conduct required by the Model Rules of Professional Conduct. . .adopted by the American Bar Association."); 28 U.S.C. § 332(d) (2004) (requiring each circuit's judicial council of to review and repeal local rules inconsistent those prescribed by the Supreme Court). The Court thus adopts the ABA's Model Rules of Professional Conduct ("model Rules") to govern disqualification.

**Civil No. 19-1560 (GMM)**
**Page -3-**

Plaintiffs appear to advance two theories supporting their motion to disqualify Defendants' counsel. First, Plaintiffs seem to suggest that a conflict of interest exists between co-defendants, named CCCUPR as an organization and its co-defendant employees. Second, that counsel from JGL itself participated in and or concealed Defendants alleged criminal activities. Both theories will be addressed in turn.

A. Conflict of Interest

"A motion to disqualify an attorney is an accepted and adequate way for a litigant to bring a potential conflict of interest to the Court's attention." Rivera Molina v. Casa La Roca, LLC, 546 F.Supp.3d 108, 110 (D.P.R. 2021), reconsideration denied, Civil No. 21-1004 (GAG), 2021 WL 3744424 (D.P.R. Aug. 24, 2021), and appeal dismissed, Civil No. 21-1544, 2021 WL 6618312 (1st Cir. Sept. 17, 2021); see also Southwire Co. v. Ramallo Brothers Printing, Inc., Civil No. 03-1100 (GAG), 2009 WL 3429773, at *1 (D.P.R. Oct. 19, 2009). But a court must also be careful as "disqualification motions can be tactical in nature, designed to harass opposing counsel, and. . .'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'" Kevlik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984) (quoting Preamble to Model Rules for Professional Conduct); see also Reyes Cañada v. Rey Hernández, 193 F.Supp.2d 409, 411 (D.P.R. 2002). As such, motions to disqualify "must be examined with

caution." Combustion Engineering Caribe, Inc. v. Geo P. Reintjes Co., Inc., 298 F.Supp.2d 215, 219 (D.P.R. 2003).

The moving party holds the burden of proof on a motion to disqualify. Velazquez-Velez v. Molina-Rodriguez, 235 F.Supp.3d 358, 361 (D.P.R. 2017); Starlight Sugar Inc. v. Soto, 903 F.Supp. 261, 266 (D.P.R. 1995). In weighing the parties' arguments, "courts must balance a client's right to be represented by an attorney of their choice and the integrity of the legal system." Somascan Plaza, Inc. V. Siemens Medical Systems, Inc., 187 F.R.D. 34, 37 (D.P.R. 1999); see also Combustion Eng'g Caribe, Inc., 298 F.Supp.2d at 219-20(quoting Douglas R. Richmond, The Rude Question of Standing in Attorney Disqualification Disputes, 25 Am. J. Trial Advoc. 17, 22-3 (2001)) ( "A disqualification motion implicates a wide range of interests, including a client's right to counsel of his choice, the hardship suffered by a party whose lawyer is disqualified, the financial burden of a client to replace disqualified counsel, lawyers' mobility, lawyers' interests in representing particular clients, lawyers' ability to trade on their expertise and to market their practice specialties, the preservation of the attorney-client relationship and client confidences, and the maintenance of the legal profession's ethical standards."). Thus, given these competing interests, the "mere possibility of a conflict" is insufficient to justify

disqualification. Reyes Cañada, 193 F.Supp.2d at 411 (*citing* Somascan, 187 F.R.D. at 37).

Model Rule 1.7 regulates concurrent conflicts of interest that arise when "there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibility to another client, a former client or a third person or by a personal interest of the lawyer." Model Code of Pro. Conduct r.1.7(a)(2) (Am. Bar. Ass'n 2023). A lawyer may nevertheless represent a client if: (1) the attorney reasonably believes that he or she can provide competent and diligent representation of the affected client, (2) affected clients given informed consent in writing. Id. at 1.7(b).

Such concurrent conflicts of interest may arise is cases in which counsel represents both an organization and its employees. Pursuant to Model Rule 1.13(g), an attorney may represent both an organization and "any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. "However, "If a lawyer for an organization knows that an officer, employee. . .is engaged in action. . .that is a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably

necessary in the best interest of the organization. . ." Model Code of Pro. Conduct r.1.13(b)(Am. Bar. Ass'n 2023).

B. <u>Participation or Concealment of illegal activities</u>

The Model Rules also bar attorneys from advising and aiding in the performance or concealment of illegal activities by their client. *See* Model Code of Pro. Conduct r.1.2(d) (Am. Bar. Ass'n 2023) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent"). However, "a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law." <u>Id.</u>

## II.  DISCUSSION OF MOTION TO DISQUALIFY

The Court carefully read Plaintiffs' *Motions to Disqualify* and considered their request. The Court, however, confronted a convoluted record and motions which made it difficult to identify and therefore, address Plaintiffs' arguments and factual allegations against the named attorneys in this case.[2] This

---

[2] Plaintiffs submitted 238 exhibits. Of those, 79 are inadmissible as they are fully or partially in Spanish. See Local Rule 5(c)barring this Court from considering documents in the Spanish language. Plaintiffs also made no request to later supplement the record with certified English translations of these Exhibits. Many of the exhibits also lack clear labels or explanations of its significance. See e.g. Docket No. 94 Exs. 184, 187, 199, 203, 204, 205, 215, and 225. There are also many repeated exhibits. See e.g. Docket No. 94 Exs. 132 and 177; 215 and 219; and 205 and 225. In sum, the submitted evidentiary record is superfluous and unorganized to the degree that correlating submitted evidence

factored into its ultimate decision to deny Plaintiffs' request, as the Court cannot disqualify Defendants' rightfully chosen counsel when it lacks a clear argument supported by admissible and substantive evidence demonstrating that misconduct justifying disqualification occurred.

Plaintiffs' arguments rest on the contention that JGL engaged in, advised, and or concealed Defendants' alleged illegal activity. As such, the Court's analysis centers around attempting to identify evidence demonstrating that JGL was engaged in any such improper activities. After excluding inadmissible evidentiary exhibits, the most the Court can say for Plaintiffs' argument is that JGL has long served as Defendants' legal counsel and has thus long provided Defendants with legal guidance and services.

On its own, the existence of a relationship between counsel and client during the time that a client allegedly committed criminal actions is insufficient to compel disqualification of counsel. Plaintiffs allege that JGL: (1) provided co-defendant Dávila with legal advice regarding the termination of employees, (Docket No. 94 ¶ 3); (2) emailed Dávila a memo on the impact of a recent Executive Order on CCCUPR's operations, (Id. ¶ 15); (3) prepared new "Standard Operating Procedures" allegedly requiring

---

with citations in Plaintiffs' Motion to Disqualify was challenging and on occasion, impossible. This affected the Court's ability to discern the strength of Plaintiffs' arguments.

employee's communications with federal agencies to go through CCCUPR's executive director, (Id. ¶ 17); (4) repeatedly communicated with an independent attorney hired by CCCUPR to investigate Plaintiffs' allegations, (Id. ¶ 19);[3] (5) conducted legal research on the implications of terminating public employees, (Id. ¶ 20); (6) drew up important employment contracts.(Docket No. 94-234 ¶ 11); (7) counselled CCCUPR regarding auction processes (Id. ¶ 20); drafted operational contracts for CCCUPRS, (Id. ¶ 25); and (8) frequently visited CCCUPR offices and took minutes materials upon leaving the office. (Docket No. 94-235 at 1).[4]

Plaintiffs' cited activities are the bread and butter of the responsibilities and activities of a private law firm representing any organization. Firstly, the Court notes that Plaintiffs present no evidence that the contemplated termination of employees and reconfiguration of CCCUPR operating procedures constituted illegal activity. Moreover, even if co-defendants activities were legally suspect, the Model Rules allow counsel to advise their clients on

---

[3] In Plaintiff Velez's affidavit, she claims that Defense Counsels' frequent engagement with the independent investigator created a conflict of interest because it biased the independent investigation of her allegations against CCCUPR. (Docket No. 94-234 ¶ 50-52). The Court notes that this is not the type of conflict of interest that can be used to justify disqualification of counsel. Moreover, it would not be unusual for counsel to meet with an independent investigator hired by their client to review the potential legal concerns identified by that investigator.

[4] The Court notes that in this affidavit by a CCCUPR employee it was reported that JGL Attorney Andres Picó ("Attorney Picó") improperly took official books of minutes outside the facilities. Even if true, this evidence alone is insufficient to establish wrongdoing justifying disqualification.

the potential implications of potentially illegal actions so long as they are not engaging or aiding their clients in committing any such activities. *See* Model Code of Pro. Conduct r.1.2(d) (Am. Bar. Ass'n 2023).

Plaintiffs advance other allegations that JGL engaged in improper behavior that justifies their disqualification. However, the evidence to support these arguments is unavailing. Plaintiffs contend that JGL Attorney Picó forged the signatures of board members in CCCUPR Board Minutes and other associated documents. (Docket No. 94 ¶ 5). To substantiate this claim, Plaintiffs submitted seven signed board minutes, two email exchanges in Spanish, and five sworn statements, none of which alleged forgery. (Id.). It is not the Court's role to undertake handwriting comparison analysis and the other admissible exhibits do not contend that any forgery occurred.

Plaintiffs also support their *Motions to Disqualify* by arguing that Defendants issued a memo proposing the transfer of $1 million into a bank account controlled by JGL regarding ongoing hospital construction, thus allegedly impermissibly comingling counsel and client funds. (Docket No. 94 ¶ 7). But Plaintiffs admit that no bank account was ever actually created. (Id.). Thus, even assuming that the money transfer was improper, which Defendants claim it was not, it never even occurred so there is nothing in this argument for the Court to consider.

Finally, Plaintiffs maintain that JGL aided Defendants in the alleged illegal destruction of evidence. (Docket No. 93 at 2). But once again, this argument fails. Even assuming Defendants engaged in the illegal destruction of documents, the Court finds no evidence JGL was in any way involved or even aware of such destruction. Thus, the Court must **DENY** Plaintiffs' request for disqualification of Defendants' counsel.

### III. MOTION FOR SANCTIONS

Plaintiffs requested that the Court impose sanctions against Defendants for their alleged spoilation of evidence relevant to the current proceedings under Federal Rule of Civil Procedure Rule 37 and the Court's inherent authority. (Docket No. 94 at 12). Plaintiffs did not specify the provision of Rule 37 on which it bases its argument, nor did it clarify if the sanction sought was the requested disqualification. As the First Circuit has reiterated time and again, it is not the job of a trial court to laboriously try and identify the goals and arguments of a party. *See* Camara de Mercadeo, Industria y Distribucion de Alimentos, Inc. v. Emanuelli-Hernandez, 72 F.4th 361, 365 (1st Cir. 2023) (*citing* McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Nevertheless, the Court here attempted to entertain Plaintiffs' request on this matter.

Based on Plaintiffs' arguments, it seems they brought their sanctions request under Federal Rule of Civil Procedure 37(e). Pursuant to Rule 37(e), a court may also sanction a party for failing to preserve "electronically stored information that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). When such information "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: upon finding prejudice to another party from the loss of the information, may order measures no greater than necessary to cure the prejudice." *See* Id. at 37(e)(1). Severe sanctions may be imposed when a party "acted with the intent to deprive another party of the information's use in a litigation." *See* Id.

The Court finds that Plaintiffs have not met their burden of demonstrating that sanctions are warranted in this matter. The Court acknowledges that Plaintiffs submitted evidence suggesting that Mrs. Vélez's computer had been accessed and potentially manipulated by an external source without her permission. (Docket No. 121). The Court also notes that Plaintiffs presented evidence that documents of some variety were shredded and disposed of at the CCCUPR office. (*See e.g.* Docket Nos. 94-179; 94-223; 94-234; 94-236). However, there is insufficient admissible and/or clear evidence to substantiate a claim that Defendants either purposefully or negligently irreversibly destroyed electronic

information or physical documents to the point where such information is now <u>non-existent</u> during the current proceedings.

### IV. CONCLUSION

The Court thus **DENIES** Plaintiffs' *Motions to Disqualify* and their related request that the Court impose sanctions on Defendants for spoilation of evidence. (Docket Nos. 93; 94). The Court also notes that Defendants, in their opposition to the present motion, requested that the Court sanction Plaintiffs for filing the instant *Motions to Disqualify* which they contend was improper and filed without evidentiary support. (Docket No. 110 at 17-19). The Court takes notice of Defendants' request and acknowledges that many of Plaintiffs' exhibits and arguments were unorganized, convoluted, and in violation with local court rules. While the Court declines to impose sanctions at this juncture, it cautions Plaintiffs to be more careful in their filings as these proceedings move forward.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this September 29, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE
